BATHSHEBA DAGGETT, Respondent, v. THE CITY OF COHOES, Appellant.

*Supreme Court, Third Department, General Term, December 11, 1889.*

1. *Municipal corporations. Sewers.*—A city is liable for damages so far as water and filth are thrown upon adjoining premises by the effect of a surface well bringing water there which otherwise would have flown elsewhere.

2. *Same.*—The fact that the connection with the public sewer was voluntary, will not defeat a recovery in such case.

3. *Same.*—The city is not bound to more than reasonable care in ascertaining defects in its sewers.

4. *Same.*—Facts were held to justify a refusal to non-suit the plaintiff on the ground that the city had no notice of the defective condition of the sewer.

5. *Same. Damages.*—In such action, the plaintiff may show the decreased value of the property owing to the injury.

This is an action to recover for damages occasioned to plaintiff's premises by the discharge thereon of water and other contents of a sewer constructed by defendant in Hart street, in the year 1871. This street runs east and west, and the sewer discharges into a sewer in Main street, which street runs north and south.

The plaintiff claims that for a part of its length this Hart street sewer was without descent.

She also claims that by the construction, in 1877, of a surface well or cess poll at the northwest corner of Congress and Hart streets a large amount of surface water, which had previously run in other directions, was turned into the Hart street sewer, and was more than its capacity, and that from this cause, among others, plaintiff's premises, on the south-west corner of those streets, were injured. This surface well was removed in 1884.

The plaintiff also claims that an obstruction was in the Hart street sewer for a long time, which also caused the discharge on plaintiff's premises of water and foul contents of that sewer; and that the defendant was negligent in not discovering and removing that obstruction until after much injury had been done.

The injury claimed is two-fold; an injury to the building by a settling of the walls, and an injury of loss of rent by the deposit of filth on the cellar floor.

The cause was tried at circuit, and the jury found a verdict for the plaintiff. From the judgment thereon, and the usual order denying a motion for a new trial, the defendant appeals.

*P. D. Niver* for appellant.

*Charles F. Boyle,* for respondent.

LEARNED, P. J.—The first point made is that the plaintiff should have been non-suited. Defendant claims that there is no proof that the water from the sewer caused the alleged injury to the house. And that there is no proof that the filth came from the sewer.

There is evidence that when the Hart street sewer was built it was connected with the Main street sewer so that the bottom of one was on the same level with that of the other; and also that at that time there were six inches of stagnant water and sand in the Main street sewer. There is evidence

also of the construction of the surface well and its removal in 1884.

It is shown, also, that there was at a certain time an obstruction in the Hart street sewer, which arose from the fact that a sewer pipe from some premises, having been connected at the top instead of the side of the Hart street sewer, had dropped in and had thus obstructed the flow of water and caused an accumulation of solid substance. This was removed some time in 1884.

There is evidence that the superintendent of streets was several times in 1882 and 1883 notified that the water came into the cellar of the plaintiff's premises, and that the same notice was given to the mayor of the city once, in 1882 or 1883. This was subsequent to the time when plaintiff became owner of the premises.

There was evidence given of injury to the building. The defendant claims that this injury was of such a character that it could not be caused by the water which came from the sewer. But it seems to us that this was a question of fact which the court could not decide. What the exact effect would be of water which came into a cellar is not a matter for a court to determine. Nor could the court decide that the foul substances, such as are carried in sewers and such as were deposited in the cellar, came, as the defendant claims, from the occupants of the house themselves. All these were matters for the jury.

The defendant claims that plaintiff should have been nonsuited, because no notice of the obstructed condition of the Hart street sewer had been shown. Smith *v.* Mayor, 66 N. Y. 295. Now, it appears that the superintendent and the mayor had received notice of the water in the cellar, and that the superintendent thought that the city ought to clear out the cellar. This indicates that he suspected that the filth in the cellar was due to some defect in the city sewer.

Of course the city is not bound to more than reasonable care. The city could not, without some indication of a

defect in the sewers, be expected to dig them up to examine whether any defect existed. And we think that the charge of the learned judge was in accordance with this view. He only stated that it was the duty of the city to inspect the sewer as often as might be necessary to ascertain obstruction, and he had previously explained this point as requiring only such duty as would be consistent with the conduct of a person of ordinary care.

So far as the water and filth were thrown upon plaintiff's premises by the effect of the surface well bringing water there which would otherwise have flowed elsewhere, this case is within the doctrine of Seifert *v.* Brooklyn, 101 N. Y. 136 ; Noonan *v.* Albany, 79 Id. 475 ; Byrnes *v.* Cohoes, 67 Id. 204.

The defendant claims that evidence was improperly admitted of the decreased value of the property owing to the injury done to the building under the rule in Uline *v.* N. Y. C. & H. R. R. R. Co., 101 N. Y. 98. That was an action for a nuisance by an unlawful construction of a railroad in a street. If the railroad were to be removed the nuisance would cease and there would be no longer any injury to the plaintiff's property. But in the present case the plaintiff's property had been put out of repair. If the city removed the obstruction still the injury had been done. And the property would continue to be so much less valuable. The plaintiff offered to prove how much it would cost to restore the building and that was objected to. She then proved the decrease in value owing to the impaired condition.

We are referred by defendant to the case of Kosmak *v.* Mayor, etc., 24 N. Y. State Rep. 798, as an authority to show that because the plaintiff has voluntarily connected her premises with the public sewer of the city, she cannot recover for the neglect of the city. But that case is entirely different from the present. In that case the plaintiff connected his premises with a private drain which he knew to be such. He was also informed that the private drain was

from property which had been taken for the Brooklyn bridge, and further, that, if he went in there, he went at his own risk, as the city officials knew nothing about it and had nothing to do with it (the private drain). But further, it will be seen that the defendant had a verdict. And the court had charged that if the drain in Chatham street (the private drain) was obstructed, the city was not responsible. But that if the obstruction were in the Frankfort street sewer (the public sewer with which the private drain connected), then the city was responsible. So that the charge of the court was contrary to the present defendant's views. And of course there was no review of that part of the charge as it was in plaintiff's favor, and the plaintiff was appellant.

It seems to us then that this case was fairly submitted to the jury, and that there is no ground for reversing the judgment.

Judgment and order affirmed, with costs.

LANDON and PUTNAM, JJ., concur.

NOTE ON " LIABILITY OF MUNICIPAL CORPORATION FOR SEWERS."

A municipal corporation is liable for discharging the contents of a sewer into a natural stream and thereby polluting its waters. Stoddard *v.* Saratoga, 52 Hun, 610.

That such sewer was built in part through private property, does not avoid liability. Id.

Nor does the fact that private persons have connected with such sewer and joined in its use, relieve the city from liability. Id.

A village is liable for so improperly providing or locating the outlet of a public sewer as to cause sewage to pass from it upon private premises. Stoddard *v.* Saratoga Spa, 127 N. Y. 261.

A sewer, though passing through private grounds for a portion of its course, was held, in this case, to be a public sewer. Id.

An adjoining owner cannot recover against a city for damages caused by his voluntary connection with a drain on its premises. Kosmak *v.* Mayor, etc., 53 Hun, 329.

A permit to make such connection does not create any liability, where the owner was informed that it was a private drain. Id.

The users of a common drain have no right of action, one against the other. Id.

A private drain does not become a public sewer by the city's purchasing the property. Kosmak *v.* Mayor, etc., 117 N. Y. 361.

A permit to drain into it does not impose duty on the city to repair or keep it free from obstruction. Id.

A parol license to discharge sewage from a particular district upon private property does not authorize a discharge from a much larger territory. N. Y. C. & H. R. R. R. Co. *v.* Rochester, 127 N. Y. 591.

The owner is entitled to restrain an injury, committed or threatened, from a discharge from the outlet of a permanent sewer. Id.

A municipal corporation is not liable, where the scheme of sewerage system is defective, if adopted in good faith. Garratt *v.* Canandaigua, 61 Hun, 623.

A municipal corporation has no right to discharge or authorize a discharge of sewage upon private lands. Beach *v.* Elmira, 58 Hun, 606.

A municipal corporation is guilty of negligence in leaving a sewer, in process of construction, unlighted and unguarded except at its head. Crowther *v.* Yonkers, 60 Hun, 586.

A city must secure protection to pedestrians against falling into a sewer in process of construction, or plainly indicate, in some way, the insufficiency of the means provided. Ott *v.* Buffalo, 61 Hun, 624.

An injured party may maintain an action against a city for its negligent omission to keep a drain, constructed by it, in repair, Wessman *v.* Brooklyn, 40 N. Y. St. Rep. 698.

A city is liable for damages for throwing upon plaintiff's premises, through a surface well, water and filth which otherwise would have flown elsewhere. Daggett *v.* Cohoes, 54 Hun, 639.

A city is bound to no more than reasonable care to ascertain a defect in its sewers. Id.

A city, which constructs a cess-pool whereby drainage, which formerly ran elsewhere, was collected and discharged into a sewer which, being unable to carry it, caused an overflow into a cellar, is liable for the injury. Daggett *v.* City of Cohoes, 54 Hun, 639. The fact that the connection with the public sewer was voluntary does not prevent a recovery against the city for injuries from the sewer's overflow, if caused by the city's neglect. It is sufficient notice to the city of the defective condition of the sewer that the superintendent of sewers and the mayor had received notice of the water in the cellar. Id.

In Demby *v.* City of Kingston, 60 Hun, 294, an action was brought against the city for maintaining a nuisance. It appeared that a stream, which ran through plaintiff's land, was used by the city as a stormwater sewer. With this sewer, private householders connected their waste pipes. No formal permission was granted them to do so. The sewer had been inspected by aldermen. The superintendent of streets testified that it had become a nuisance. It was held that the city was chargeable with notice and was liable.

An action may be maintained against the city for damages for discharging sewage through creeks of adjoining towns to the detriment of lands along such creeks. Hooker *v.* City of Rochester, 59 Hun, 616; aff'g 126 N. Y. 685. An injunction restraining such unlawful use of the water courses may be also granted.