JAMES H. BAILEY, as Administrator, etc., of CHARLES E. BAILEY, Deceased, Respondent, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

*Negligence — an employee crushed, while coupling two cars, by timber projecting over one of them.*

A railroad company is not liable for an injury to an employee caused by the unsafe manner in which timber had been placed upon a car, between the ends of which timber and another car the employee, while coupling the cars together, was crushed.

APPEAL by the defendant, The President, Managers and Company of the Delaware and Hudson Canal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Essex on the 19th day of February, 1897, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 19th day of March, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Lewis E. Carr*, for the appellant.

*J. W. Houghton*, for the respondent.

PARKER, P. J.:

The plaintiff's intestate was employed as a brakeman on the defendant's road, and was killed while coupling a box car to a gondola, so called, at Ticonderoga Junction.

Timbers about twelve by fourteen inches square and about forty feet long were loaded upon the gondola, and extended over upon another one coupled to it. The ends of these timbers extended past the end of the gondola car some twelve to eighteen inches, and beyond its bumper, so that when such car was pushed up against the box car only about six inches of space was left between the end of the timber and the end of the box car. While he was coupling the two cars the head of the deceased was caught and crushed in this narrow space. There is no claim but that the cars and their bumpers and all their parts were in perfect order at the time the deceased was called upon to couple them, and the only negligence

complained of is that the timbers loaded thereon projected so far over the end of the car.

The trial court, in instructing the jury as to the defendant's duties in that respect, charged as follows: "The defendant, the railroad company, owed a duty to plaintiff's intestate to use reasonable care to protect the deceased from injury while he was engaged upon its train, and that duty embraced the obligation of using reasonable care in furnishing a safe *appliance* in the first instance, and to thereafter use reasonable care to keep that *appliance* reasonably safe for him while he was in that service. The appliance in this case, I charge you, was the car itself with this timber upon it when it was presented for the trainmen to move — that is to say, taking the car loaded with timber when it was presented for the trainmen to move on towards its destination. That was the appliance which this company furnished. It owed the duty to furnish a reasonably safe appliance, and also the duty * * * to use reasonable care to inspect that appliance during the progress of the car towards its destination."

To this part of the charge an exception was taken by the defendant, and, in my judgment, such exception was well taken.

It is the duty of the master to furnish to the employee safe appliances with which to carry on the work required. A proper inspection for the purpose of discovering defects which may arise from the use of such appliances is also a part of his duty, and he is not relieved from his obligation to perform that duty by delegating it to a subordinate. The negligent omission to inspect on the part of the subordinate is deemed the negligence of the master himself. (*Bailey's Case*, 139 N. Y. 302.)

The charge evidently proceeds upon the theory that the duty imposed by this rule is as applicable to the loading and inspection of the load on the car as it is to the car itself; and the jury were plainly given to understand that negligence in the inspection of the load upon the car in question, if any existed, was a negligence for which the defendant was liable. And so it would have been if the loaded car is to be considered an appliance furnished to the brakeman by the company.

But in the *Byrnes Case* (113 N. Y. 251) a plain distinction is taken between an injury resulting from a defective and unsafe car and one arising from an unsafe load upon the car. In that case it

is held that the master has performed his full duty to the servant if he has furnished him with a safe car and appliances with which to do the work, and provided "a proper system and competent men for the inspection of cars after they were loaded and before they were to be used." In that case a brakeman was not allowed to recover against the company for an injury sustained from the car's being so loaded that the brake could not be used; and the decision is put upon the express ground that the loading of the car is the work of the employee, and any negligent omission in either loading or inspecting it is but the negligent method in which the co-employee of the brakeman performs his duty. It is manifest that the rule laid down in that case is not the one adopted by the trial judge. The distinction there made is ignored in the charge, and the duty of the company and the work of the employee are, by the charge, confounded as one. The jury are expressly told that the load is a part of the appliance which it is the duty of the company to furnish and inspect, and nowhere are they instructed that the negligent omission of the employees to inspect the load was not the negligence of the company, provided it furnished a proper system of inspection and competent men to carry it out.

It is urged on the part of the respondent that the *Byrnes* case is no longer the correct rule upon this subject. This claim, however, is not sustained by an examination of the cases relied upon. In the *Ford Case* (117 N. Y. 639) the same precise distinction is again made, and upon the second appeal (124 N. Y. 493), instead of being rejected, the distinction is practically recognized and affirmed. Upon the second trial, however, there had been put into the case the new fact that the defendant had never provided a proper system for the inspection of the loaded cars, and for this reason alone the plaintiff was then allowed to recover. Nowhere in that opinion is it intimated that a company which had provided a proper system of inspection, and competent men to make it, would be liable for *their* negligent omission to properly inspect a loaded car. So in the *Redington Case* (84 Hun, 231) the case really turned upon the omission of that company to furnish a proper system for the inspection of its loaded cars. Cases holding that a defective brake rod, or a defective stake for supporting loads, are an appliance which it is the duty of the company to furnish, are not to be confounded with

the load itself.   The distinction taken in the *Byrnes* case has never been modified, and is an authority controlling this appeal.

Neither is the principle there involved a new departure from former rules.   It is the clear duty of the master to at all times furnish the servant safe material with which to do the work required, so far as the exercise of reasonable care in selection and inspection can make them so.   But the use of such material is necessarily the work of the servant.   Whoever accepts service under the master does so with the knowledge that it is the servant, and not the master, who will cause any injury that may result from a careless use of the material so furnished.   And so far as protection against such careless use is concerned, he can, in reason, expect no more from the master than that competent co-servants be employed, and a judicious system be adopted for carrying out the work.   The car is furnished for the express purpose of being loaded and run over the road, and the brakeman is one of the employees, and the man who loads and inspects the loading is another whose duty it is to carry out that purpose.   Each uses, within his own sphere, the car furnished by the master, and both are engaged in carrying out the purpose for which it is furnished.   Surely the loading of the car was not an act "pertaining to the duty the master owes to his servants" any more than running it over the road was such an act; and, hence, within long-settled rules, the master is not liable for negligence in loading it.   (*Crispin* v. *Babbitt*, 81 N. Y. 516; *Slater* v. *Jewett*, 85 id. 61; *Flike Case*, 53 id. 549; *Fuller Case*, 80 id. 46; *Cullen* v. *Norton*, 126 id. 1.)

It is further urged, upon the part of the respondent, that the defendant is shown to have been negligent, because it did not provide a proper system for the inspection of its loaded cars.   Without discussing whether the rules which were shown to exist on that subject were or were not sufficient, a new trial must be granted because of the error in the charge above alluded to.   That error is not cured, even though there were abundant evidence, in other respects, of defendant's negligence.   Under the charge the jury may very well have based their verdict upon the theory that defendant was responsible for the negligent omission of its employees to properly inspect the loaded car at each of the stations through which it passed; and, therefore, we are not able to say that it ever passed

upon any question concerning its rules and system of inspection. In fact, that question does not seem to have been left to the jury at all, and it is one which we are not now called upon to consider.

Without considering several other grounds of error claimed by the appellant, I conclude that the judgment must be reversed.

All concurred, except PUTNAM, J., not sitting.

Judgment and order reversed and a new trial granted, costs to abide the event.