If the city intended to accomplish such result by the passage of the ordinance, it should be clearly and unequivocally stated in the ordinance itself.

There is ample remedy in the state law for punishment of any person knowingly delivering less than the quantity he represents he is delivering, and the remedy is readily enforced. See Penal Law (Consol. Laws 1909, c. 40) § 2411; People v. Sheffield Farms, 206 N. Y. 79, 99 N. E. 181.

The acts complained of not being within the purview of ordinances, the judgment should be reversed, and judgment ordered in favor of the defendant on the merits, with costs in this court and the court below.

CRANE, J., concurs.

KAPPER, J. I concur on the ground that the ordinance does not expressly nor by implication reach a sale by a producer or packer to a middleman or dealer, but is limited to sales to consumers.

---

TYNDALL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

·1. MASTER AND SERVANT (§ 106*)—DEATH OF ENGINEER—IMPROPER LOADING OF FREIGHT CAR.

Where a freight car door fell from the train and lodged on the track and a following passenger train was derailed and the engineer killed, the railroad company is not liable for his death if the door was caused to loosen and fall by the improper loading of the car; the car being a closed one, locked and sealed, and belonging to another road.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–198; Dec. Dig. § 106.*]

2. MASTER AND SERVANT (§ 265*)—DEATH OF ENGINEER—RES IPSA LOQUITUR.

Where a door from a freight car belonging to another company and incorporated in a freight train of defendant railroad company fell from the car and lodged on the track and a following passenger train was derailed and the engineer killed, the rule of res ipsa loquitur was applicable; there being evidence that the socket, a part of the locking device of the door, was gone so that the door could not be locked, and that the wood looked weather-beaten in the place where the socket had been, and that the staple holding the chain which held the pin for the hasp was gone, and that the seal for some reason had once been found missing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

Appeal from Trial Term, Rensselaer County.

Action by Mary A. Tyndall, administratrix, against the New York Central & Hudson River Railroad Company. From an order setting aside a verdict in favor of plaintiff and granting a new trial, plaintiff appeals, and from an order denying defendant's motion to dismiss the complaint, defendant appeals. Both orders affirmed, and new trial granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

·  :Argued before SMITH, P. J.,· and KELLOGG, LYON, HOW-ARD, and WOODWARD, JJ. .

John T. Norton, of Troy, for appellant.
Visscher, Whalen & Austin, of Albany, for respondent.

HOWARD, J. [1] The plaintiff's intestate died as a result of injuries received by the wrecking of one of the defendant's fast, northbound passenger trains, of which he was engineer, about eight miles north of Hudson. The wreck was occasioned because a door had dropped from one of the cars of a freight train of the defendant going south, and had fallen across the north-bound track. The freight train had passed only a few minutes before the time of the accident. The car was a Lehigh Valley car. It was loaded properly at St. Louis with photographic dry-plates. At West Seneca, N. Y., it was noticed that the seal which was put on at St. Louis was gone, and a new seal was put on. After the accident, an examination of the car in question showed that the socket, a part of the locking device of the door, was gone, and that the wood underneath where the socket had been looked weather-beaten. A staple which held the chain to which was attached the pin for the hasp was gone. One of the boxes which constituted the load was turned somewhat "kitty-corner"; otherwise the load was not, apparently, out of place. Some of the end boards of the car were shoved out of position down near the floor. The car had been several times inspected by the defendant and not found defective.

All questions of negligence on the part of the defendant were removed from the consideration of the jury by the trial justice except such as were embraced within the following questions which, only, were submitted to the jury:

(1) "What caused the accident?"

(2) "Was it the duty of the defendant to use ordinary care and prudence to so adjust that load as to not cause the door to bulge out and to be forced from the car?"

(3) "Was the defendant negligent in that respect? Did it fail to do anything which in the exercise of reasonable care and forethought it ought to have done?"

After the verdict, upon reflection and consideration, the trial justice concluded that he had adopted an "erroneous criterion of responsibility," and for that reason he set aside the verdict.

· · The law seems to be well settled that the loading of a car is not an act pertaining to the duty which the master owes to his servants, and that therefore the master is not liable for negligence in the loading of cars. The car is the appliance, and for negligence in furnishing the *appliance* the master *is responsible;* the loading of the car is the use of the appliance, and for negligence in the *use* the master *is not liable.* ·Byrnes v. N. Y., L. E. & W. R. R. Co., 113 N. Y. 251, 21 N. E. 50, 4 L. R. A.· 151; Bailey v. D. & H. C. Co., 27 App. Div. 305, 50 N. Y. Supp. 87. While there might arise instances in the loading of open cars where this rule would not apply, it seems to be particularly applicable to the situation in hand. This was a closed car, locked and sealed. It was a car belonging to an-

other railroad. The load was of heavy material in square boxes "laid flat" upon the bottom of the car and distributed evenly over the car at an average height of not more than 3½ feet. To have required this defendant under the circumstances to break the seal, open this car, and inspect the load, would have been an absolute repudiation of the law as it has been established. And to require this railroad and all other railroads in the future to open such cars and all other closed cars and inspect the loads at every station where they may stop long enough to be inspected would be to establish a rule burdensome, oppressive, unreasonable—almost impossible.

[2] The doctrine res ipsa loquitur should have been applied to the circumstances disclosed at the trial. Every element for the correct application of that rule was presented. The relation of the parties never determines whether the rule is applicable. The underlying principle of the rule ignores the relation of the parties. Griffen v. Manice, 166 N. Y. 189, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630. It has been said that the rule should be applied with caution, but I see no reason to observe caution in applying it. After the rule is found to fit the facts, caution avails nothing; it certainly should not be permitted to become an obstacle in the way of justice. If the rule is applicable to the situation, it should be invoked without caution and without hesitation. It is, of course, well to be careful in determining whether this rule of evidence is applicable to the facts proven; in fact, it is always well to be careful, but there is no occasion for greater care here than in determining any other question of law. The only reason to hesitate in the case before us is because the car from which the door fell did not belong to the defendant. But as soon as the car came upon the defendant's road, the defendant assumed absolute control over it, and, as to those defects which could be discovered by inspection, it owed to the deceased and to all other persons exactly the same measure of care in operating and moving it as if the car had been the property of the defendant. Goodrich v. N. Y. C. & H. R. R. R. Co., 116 N. Y. 398, 22 N. E. 397, 5 L. R. A. 750, 15 Am. St. Rep. 410; Gottlieb v. N. Y. L. E. & W. R. R. Co., 100 N. Y. 462, 3 N. E. 344. So far as this accident goes, therefore, the Lehigh Valley car became the defendant's car.

It is unnecessary here to reason about the res ipsa loquitur doctrine; it has been defined and reasoned upon many times by the highest courts and has become fixed as a rule of circumstantial evidence. The Court of Appeals, in Breen v. N. Y. C. & H. R. R. R. Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450, defines the rule as follows:

"There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part."

This Lehigh Valley car, the one in question, was under the control of the defendant; doors, such as the one on this car, do not ordinarily fall off when reasonable care is used in securing them; the socket,

141 N.Y.S.—56

a part of the locking device of the door, was gone so that the door could not be locked; the wood looked weather-beaten in the place where the socket had been; the staple holding the chain which held the pin for the hasp (another device for fastening the door) was gone; the seal for some reason had once been found missing. These established circumstances were not direct proof of negligence, but they raised a presumption of negligence against the defendant, and therefore at the close of the evidence it was for the jury to determine whether this presumption had been overcome by the evidence introduced by the defendant.

It follows that the motion for a nonsuit was properly denied, and that the order setting aside the verdict was properly made. Both orders should be affirmed and a new trial granted.

Order affirmed, without costs. All concur; KELLOGG and WOODWARD, JJ., in memorandum.

WOODWARD, J. (concurring). I concur with Mr. Justice HOWARD.

The only tenable theory of the case was not submitted to the jury. The accident, which was one which does not occur under ordinary circumstances, was due wholly to operations under the control of the defendant, and the simple statement of the facts, supported by evidence, was sufficient to send the case to the jury, after the defendant had had an opportunity to present an explanation; but the case, from the drawing of the pleadings to the final submission, appears to have been conducted without any clear idea of the result to be accomplished, and it has resulted in a situation which can only be met by sending the case back for a new trial. If the accident resulted from the manner of the loading, the defendant was not liable. If, on the other hand, as the evidence in the case tended to show, the accident resulted from defects in the car door or its fastenings, which a reasonable and proper inspection should have disclosed to the defendant, the doctrine of res ipsa loquitur would apply, and it would call upon the defendant for explanation, and this explanation with the attendant circumstances would be proper matter for the jury to consider.

For these reasons concurrence in the affirmance of the order seems to be necessary.

JOHN M. KELLOGG, J. (concurring). The fall of the door without any apparent cause is some evidence that it was not properly secured. When the defendant received this foreign loaded car upon its road, the only duty it owed was a proper inspection to see that it was in suitable condition for service. It would naturally seem that a proper inspection would have disclosed the fact that the door was not properly secured, or was so constructed that in its ordinary use it might fall from the car. There is evidence of an inspection, but the fall of the door unaccounted for is some evidence that there could not have been a proper inspection. The questions are: Was the door properly secured? If not, would a reasonable inspection have disclosed the fact? Was there such an inspection?